## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM TRIPODI,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 06-4071** |
| | : | |
| **COASTAL AUTOMATION LLC, AND** | : | |
| **MACHINE DESIGN SERVICE INT'L,** | : | |
| **AND AUTOMATIC HANDING INT'L** | : | |
| **AND MACHINE DESIGN SERVICE,** | : | |
| **INC.,** | : | |
| **Defendants** | : | |

### M E M O R A N D U M

STENGEL, J.                                            September 26, 2007

During the course of his employment with Philadelphia Newspapers, Inc., William

Tripodi injured his left hand and fingers in an open nip point of a conveyor system.  As a

result, he filed this products liability action against the original manufacturer of the

conveyor system, Machine Design Service, Inc., and three other entities that acquired the

assets of Machine Design Service, Inc.  Two of the acquiring companies, Coastal

Automation, LLC and Automatic Handling International, filed a Rule 12(b)(6) motion to

dismiss the complaint.  Relying on an affidavit and other supporting documents, the two

defendants argue that Mr. Tripodi cannot establish the necessary facts to hold them liable

under Pennsylvania's "product-line" exception to the general rule against corporate

successor liability.  For the reasons set forth below, I will deny the moving defendants'

motion to dismiss.

I.    **BACKGROUND**[1]

On November 17, 2005, William Tripodi was working at the Philadelphia

Newspapers, Inc.'s facility in Conshohocken, Pennsylvania.  He was assigned to the

conveyor system, which is utilized at a loading dock for the purpose of loading

newspapers into delivery trucks.  While performing his duties, his left hand and fingers

became trapped in an open nip point of the conveyor system.  As a result, he suffered

severe injuries.

Machine Design Service, Inc. designed and manufactured the conveyor system that

caused Mr. Tripodi's injury.  In August of 2005, defendants Coastal Automation, LLC,

Automatic Handling International, and Machine Design Service International acquired all

of the assets of Machine Design Service, Inc., including the manufacturing assets.  After

the acquisition, the three entities continued the same manufacturing operation and

marketed the same product line of conveyor systems as Machine Design Service, Inc.

On September 12, 2006, Mr. Tripodi filed this federal lawsuit against Machine

Design Service, Inc., Coastal Automation, LLC, Automatic Handling International, and

Machine Design Service International.[2]  Mr. Tripodi alleges that each of the four

---

[1]I have accepted as true all allegations of the complaint.

[2]The plaintiff invokes this court's jurisdiction under 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in controversy is in excess of seventy-five thousand dollars, exclusive of interest and cost.

2

defendants are strictly liable for the defective conveyor system.[3]  Machine Design

Service, Inc. is named as a defendant because it is the manufacturer and seller of the

subject defective product.  Since Pennsylvania has a general rule against successor

liability, Mr. Tripodi attempts to hold Coastal Automation, LLC, Automatic Handling

International, and Machine Design Service International liable under the Pennsylvania

court-created "product-line" exception.

On February 5, 2007, Coastal Automation, LLC and Automatic Handling

International ("moving defendants") filed the Rule 12(b)(6) motion to dismiss under

consideration.  The motion included several exhibits and an affidavit from the President

of Automatic Handling International.  On February 22, 2007, Mr. Tripodi filed his

response in opposition to the motion to dismiss.  On May 3, 2007, following a Rule 16

conference with the parties, I granted the plaintiff until July 2, 2007 to conduct limited

discovery to respond to the moving defendant's motion to dismiss.  The moving

defendants' supplemental memorandum was due by August 2, 2007, and the plaintiff's

response was due August 20, 2007.

On June 11, 2007, the parties took the deposition of Ronald Fransen, an individual

who formerly worked closely with the owner of the defendants, and who could describe

the management and operation of the successors to Machine Design Services, Inc.  No

---

[3]The conveyor system at the Conshohocken facility was defective because "it was not provided with every element necessary to make it safe for its intend use and without any condition which made it unsafe for its intended use."  Compl. ¶ 15.  In addition, the conveyor system failed to provide all the necessary warnings and instructions.  Id. ¶ 16.

other discovery was conducted, and the parties have timely submitted supplemental briefing on the moving defendants' 12(b)(6) motion to dismiss.

## II.     RULE 12(B)(6) MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor. Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1164-65 (3d Cir. 1987).

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The rule is designed to screen out cases where "a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-12 (3d Cir. 1999). A complaint should not be dismissed on a 12(b)(6) motion if the claim is adequately stated and if the factual allegations raise a right to relief "above the speculative level." Bell Atlantic Corp. V. Twombly, 127 S. Ct. 1955, 1965 (2007). "A well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." Id. (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (internal quotations omitted). The issue, therefore, is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer further evidence to support its claims. Scheuer, 416 U.S. at 236; see also Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

4

In a 12(b)(6) motion, courts generally consider the allegations contained in the complaint, exhibits attached to the complaint, and public records of which the court may take judicial notice.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.   DISCUSSION

### A.     Motion to Dismiss Versus Motion for Summary Judgment

Relying on documents and facts not found in the complaint, the moving defendants argue that the product-line exception does not apply and the claims against them should be dismissed.  In his original answer to the motion to dismiss, the plaintiff asked this court to treat the defendants' motion as a 12(b)(6) motion and not to convert it to a motion for summary judgment.  In other words, the plaintiff requested that the court not consider any matters outside of the complaint in ruling on the pending motion.  In their supplemental briefs, both parties refer to the June 11, 2007 deposition of Ronald Fransen, as well as other matters outside the pleadings.

Where information beyond the pleadings is cited in support of a 12(b)(6) motion, I have the option of converting the motion to dismiss to a motion for summary judgment. Federal Rule of Civil Procedure 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

5

FED. R. CIV. P. 12(b) (emphasis added).  Therefore, the court has the discretion to determine under what posture it would like to consider a Rule 12(b)(6) motion filed with "matters outside the pleading."  A court can exclude any documents or affidavits filed with a Rule 12(b)(6) motion and examine whether the plaintiff states a legitimate claim based solely on the complaint.  Alternatively, a court can notify the parties that it is treating a 12(b)(6) motion as a Rule 56 motion for summary judgment.  In such cases, the court examines any appropriate extrinsic materials submitted by the parties and determines whether a "genuine issue" exists as to a "material fact" of the claim.  See FED. R. CIV. P. 56.  The court, however, must adhere to the requirements of Rule 56(f) and afford a nonmoving party an opportunity to obtain any necessary discovery to adequately oppose the motion for summary judgment.[4]

At this point in the case, with only limited discovery having been conducted, a Rule 56 summary judgment motion is premature.  Accordingly, I will examine the defendants' motion under the 12(b)(6) standard detailed above.  I will exclude from consideration any documents that the moving defendants submitted with their motion, as well as the materials outside the complaint presented in supplemental briefing by both

---

[4]The plaintiff filed an affidavit, in accordance with Rule 56(f), to request discovery in the event this court converts the moving defendants' motion to a summary judgment motion.  Following the Rule 16 conference, I allowed the plaintiff to conduct limited discovery to respond to the pending motion to dismiss regarding the applicability of Pennsylvania's "product-line" exception to the moving defendants. However, at no time has either party requested that I consider the present motion as a motion for summary judgment under Rule 56, nor did I provide notice of any intention to do so in my May 3, 2007 order.

parties.[5]  The moving defendants will have an opportunity to file a Rule 56 motion for summary judgment upon the close of discovery.

Thus, the question for this court is: If the complaint is construed in the light most favorable to Mr. Tripodi, do the allegations contained therein raise more than a speculative right to recovery?  The answer is yes.  The allegations of the complaint state a plausible claim for product-line liability against the successor companies to Machine Design Service, Inc.

B.     Pennsylvania's Product-Line Exception

The complaint alleges that the moving defendants are strictly liable for the injuries caused by the defects in the conveyor system manufactured and sold by defendant Machine Design Service, Inc.  The plaintiff invokes Pennsylvania's product-line exception to hold the moving defendants liable for a former company's product.[6]  In plaintiff's brief in opposition to the motion to dismiss, he lays out why the allegations in the complaint state a claim under the product-line exception.  I agree with the plaintiff's analysis and I incorporate it below.

Pennsylvania's successor liability doctrine provides that "when one corporation

---

[5]I should note that the moving defendants continue to classify their motion as a Rule 12(b)(6) motion and do not request that the motion be treated alternatively as a motion for summary judgment, despite their inclusion of matters outside the complaint.

[6]The parties do not dispute that Pennsylvania law applies to the plaintiff's tort claims.  Thus, the court must "follow (or predict if necessary) what the Pennsylvania Supreme Court would do and, in so doing, we may rely on opinions of intermediate appellate courts."  Kradel v. Fox River Tractor Co., 308 F.3d 328, 331 n.4 (3d Cir. 2002).

sells or transfers its assets to a second corporation, the successor does not become liable for the debts and liabilities of the predecessor." <u>LaFountain v. Webb Indus. Corp.</u>, 951 F.2d 544, 546-47 (3d Cir. 1991); <u>see also</u> <u>Dawejko v. Jorgensen Steel Co.</u>, 434 A.2d 106, 110 (Pa. Super. Ct. 1981).

In <u>Dawejko</u>, the Pennsylvania Superior Court adopted the formulation of the product-line exception articulated in a New Jersey case:

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

<u>Dawejko</u>, 434 A.2d at 110 (quoting <u>Ramirez v. Amsted Indus. Inc.</u>, 431 A.2d 811, 825 (N.J. 1981)).  The court made clear, however, that its statement of the exception was intentionally "phrased in general terms, so that in any particular case the court may consider whether it is just to impose liability on the successor corporation." <u>Dawejko</u>, 434 A.2d at 111.  The court also advised that "it will always be useful to consider whether the three-part test stated in <u>Ray v. Alad Corp.</u>, 560 P.2d 3 (Cal. 1977), has been met." <u>Dawejko</u>, 434 A.2d at 111.  In <u>Ray v. Alad Corp.</u>, the California Supreme Court held that successor liability should be imposed upon a successor company if three circumstances could be shown:

> (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule,

8

and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.

560 P.2d at 8-9.

The Pennsylvania Superior Court revisited the product-line exception in Hill v. Trailmobile, Inc., 603 A.2d 602 (Pa. Super. Ct. 1992), and held that the three factors in Ray were a requirement in the application of the exception in Pennsylvania.  Id. at 606 ("The [Dawejko] court also stated that the product-line exception to the general rule of no liability for successor corporations may only be applied when the following three circumstances have each been established: [listing the three Ray factors].") (emphasis omitted).  The Third Circuit recently acknowledged this change in the Pennsylvania product-line exception and held that the first Ray factor must be established in order to apply the product-line exception in Pennsylvania.  See Kradel v. Fox River Tractor Co., 308 F.3d 328, 332 (3d Cir. 2002) ("It is thus clear that the inability to recover from an original manufacturer is a prerequisite in Pennsylvania to the use of the product line exception.").  See also Dale v. Webb Corp., 252 F. Supp. 2d 186, 189-90 (E.D. Pa. 2003).

 Relying on Hack v. H.V.R. Parts, Inc., 742 F. Supp. 283, 285 (W.D. Pa. 1990), moving defendants argue that, under the first Ray factor, the plaintiff must establish that his lack of remedy is a direct result of the successor corporation's acquisition.  See also, Conway v. White Trucks, Div. Of White Motor Corp., 885 F.2d 90, 97 (3d Cir. 1989) (requiring "the virtual destruction of the plaintiff's remedies against the original

manufacturer *caused by* the successor's acquisition," in the context of the plaintiff's

failure to exercise potential remedies against the original manufacturer in bankruptcy

proceedings) (emphasis added).  In other words, moving defendants urge this court to

adopt a causation requirement as part of the first Ray factor.

Both parties discuss the current unsettled state of the law in the Eastern District of

Pennsylvania with respect to the causation requirement after the Third Circuit's decision

in Kradel made the Ray factors prerequisites to the application of the product-line

exception, rather than balancing factors.  See Kradel, 308 F.3d at 332.  Since Kradel,

courts in this district have grappled with whether the causation requirement is an

"essential element" of the first Ray factor, without reaching a consensus.[7]   See, e.g., Dale

v. Webb Corp., 252 F.Supp.2d at 192-93 (predicting that the Supreme Court of

Pennsylvania would require causation as an essential element of the first Ray factor),

Mitchell v. Powermatic Corp., 2004 U.S. Dist.  LEXIS 2450 (E.D. Pa. 2004) (calling the

causation requirement "a wrinkle in the analysis of this factor that has yet to be addressed

by either the Pennsylvania Supreme Court or the Third Circuit").  However, accepting as

true all of the well-pleaded facts contained in Mr. Tripodi's complaint, and drawing all

reasonable inferences in his favor, I do not reach the issue of causation (raised by the

---

[7]In his supplemental brief, the plaintiff cites several cases predicting that Pennsylvania law
would not require causation.  See, e.g., Lacy v. Carrier Corp., 939 F. Supp 375, 383-84 (E.D. Pa. 1996),
Olejar v. Powermatic Division of DeVlieg-Bullard, Inc., 808 F. Supp. 439, 444 (E.D. Pa. 1992).  As the
court in Dale acknowledged, such authority exists on both sides of the split; however, these cases were
decided before Kradel made the Ray factors formal prerequisites to recovery under the product-line
exception, rather than mere guiding factors.  See Dale, 252 F. Supp. at 191-92.

moving defendants) in deciding this motion to dismiss.

Applying the Pennsylvania requirements for the product-line exception to the allegations of Mr. Tripodi's complaint, Mr. Tripodi establishes that all factors are present and states a valid claim against the moving defendants.  First, under the three <u>Ray</u> factors, the plaintiff avers that: (1) his remedies against Machine Design Services, Inc., the original manufacturer, were virtually destroyed by the moving defendants' acquisition of Machine Design Services, Inc.'s business; (2) the moving defendants have the ability to assume the risk-spreading rule of Machine Design Services, Inc.; (3) it is fair to require the moving defendants to assume responsibility for Machine Design Services, Inc.'s defective products because the moving defendants now enjoy the benefit of Machine Design Services, Inc.'s goodwill in the continued operation of the business.  <u>See</u> Compl. ¶¶ 18-20.  Under the <u>Dawejko</u> analysis, the plaintiff alleges the following: (1) the moving defendants acquired all or substantially all of the manufacturing assets of Machine Design Services, Inc.; and (2) the moving defendants have undertaken essentially the same manufacturing operation as Machine Design Services, Inc.  <u>See</u> Compl. ¶¶ 9-11.

Accordingly, plaintiff William Tripodi states a valid products liability claim against the moving defendants, Coastal Automation, LLC and Automatic Handling International, based on the alleged defective conveyor system and under Pennsylvania's product-line exception to successor liability.

An appropriate Order follows.

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM TRIPODI,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 06-4071** |
| | : | |
| **COASTAL AUTOMATION LLC AND** | : | |
| **MACHINE DESIGN SERVICE INT'L,** | : | |
| **AND AUTOMATIC HANDING INT'L,** | : | |
| **AND MACHINE DESIGN SERVICE,** | : | |
| **INC.,** | : | |
| **Defendants** | : | |

## O R D E R

**STENGEL, J.**

    **AND NOW**, this 26th day of September, 2007, upon consideration of the Motion of Defendants, Coastal Automation, LLC and Automatic Handling International, to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b) (Document # 10), the Answer of Plaintiff William Tripodi to the Motion to Dismiss Plaintiff's Complaint (Document #13), as well as the Supplemental Briefs filed by both Defendants and Plaintiff (Documents #17 and #18, respectively), it is hereby **ORDERED** that the defendants' motion is **DENIED**.

                                BY THE COURT:

                                  /s/ Lawrence F. Stengel
                                LAWRENCE F. STENGEL, J.